**UNITED STATES of America,**
**Plaintiff,**

v.

**Francis Leo CAPPAERT et al.,**
**Defendants.**

**No. Civil LV–1687.**

United States District Court,
D. Nevada.

April 9, 1974.

V. DeVoe Heaton, U. S. Atty., Las Vegas, Nev., John H. Germeraad, Dept. of Justice, Washington, D. C., for plaintiff.

Lionel, Sawyer, Collins & Wartman, Las Vegas, Nev., for defendants.

ROGER D. FOLEY, Chief Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Introduction

This is a civil action in which the United States as plaintiff has sought to have its rights declared to the use of so much of the waters appurtenant to the land known as Devil's Hole, Death Valley National Monument, as may be necessary for the needs and purposes of maintaining the pool and the desert pupfish therein, and that such rights be declared to have a priority date of January 23, 1952. The United States also has sought both a preliminary and a permanent injunction enjoining the defendants Francis Leo Cappaert, Marilyn I. Cappaert, B. ·L. Barnett, and Spring Meadows Ranch, and each of them, from pumping wells known as Nos. 1, 2, 3, 4, 5, 6, and 16 and 17, and from all other wells now existing or hereafter drilled on designated sections of land,[1] except for domestic purposes, which would be similarly detrimental to the water rights of the United States and the survival of the Devil's Hole pupfish. On June 5, 1973, this Court made its findings of fact and stated its conclusions of law, issued its preliminary injunction, and appointed a Special Master.

On appeal, the Court of Appeals made an order that this Court enter its final decree.

At a conference with this Court on February 15, 1974, counsel for all parties advised that they had no further evidence to offer and agreed that a final decree should be entered.

---

1. Wells Nos. 1, 2, 3, 4 and 5 are located in Section 7, T. 18 S., R. 51 E.; Well No. 6 is located in Section 3, T. 18 S., R. 50 E.; Wells Nos. 16 (1A) and 17 (1B) are located in Section 8, T. 18 S., R. 51 E. All other wells now existing or hereafter drilled within Sections 28, 33 and 34, T. 17 S., R. 50 E.; within Sections 31 and 32, T. 17 S., R. 51 E.; within Sections 2, 3, 4, 9, 10, 11, 12, 13, 14 and 15, T. 18 S., R. 50 E.; and within Sections 5, 6, 7, 8, 17 and 18, T. 18 S., R. 51 E., M.D.B. & M.

*Findings of Fact*

1. Plaintiff is the United States of America and the jurisdiction of the Court was invoked under Title 28, Section 1345, United States Code.

2. Spring Meadows, Inc., was a corporation formed under the laws of the State of Nevada on June 17, 1966, with 60 Court Street, Reno, Nevada, listed as its place of business. Spring Meadows, Inc., filed a Certificate of Voluntary Dissolution with the Secretary of State for the State of Nevada on December 30, 1970. The only stockholders at the time of the filing of the Certificate of Voluntary Dissolution were Francis Leo Cappaert and Marilyn I. Cappaert of Vicksburg, Mississippi.

3. A stipulation for amendment of parties was filed with the Court and approved under which the defendants Francis Leo Cappaert and Marilyn I. Cappaert stipulated that they had actual notice of this lawsuit, had been properly served and subjected themselves to the jurisdiction of the United District Court for the District of Nevada.

4. Spring Meadows Ranch is the land owned by Francis Leo Cappaert and Marilyn I. Cappaert located near Lathrop Wells, in the County of Nye, State of Nevada. Spring Meadows Ranch is a cattle ranch consisting of approximately 12,000 acres, of which 4,000 acres are in cultivation. Approximately 1,700 to 1,800 head of cattle are fed on the ranch at any given time.

5. Defendant B. L. Barnett is ranch manager of the Spring Meadows Ranch.

6. The United States is the owner of Devil's Hole, Death Valley National Monument, and has been at all times since the Treaty of Guadalupe Hidalgo in 1848.

7. Devil's Hole, a 40-acre tract, was withdrawn from the public domain and became part of Death Valley National Monument by Presidential Proclamation 2961, of January 17, 1952. The Presidential Proclamation was published in the Federal Register on January 23, 1952 (17 Fed.Reg. 691).

8. Devil's Hole is a limestone cavern which lies approximately 50 feet below the general land surface, with sheer walls on all but its western side. At the bottom is a pool of water which is the home of the Devil's Hole pupfish, Cyprinodon diabolis. The pool is about 65 feet long and 8 to 10 feet wide, with a natural rock shelf at the western edge. This natural shelf slopes to the east, is 16 to 17 feet in length, and varies in width from 4 to 9 feet.

9. Through the Presidential Proclamation of January 17, 1952, and its publication in the Federal Register on January 23, 1952 (17 Fed.Reg. 691), the unappropriated waters in, on, under and appurtenant to Devil's Hole were withdrawn from private appropriation as against the United States and reserved to the extent necessary for the requirements and purposes of the said reservation.

The purposes of the reservation of Devil's Hole as part of Death Valley National Monument includes the preservation of the pool of water and the preservation of the Devil's Hole pupfish (Cyprinodon diabolis) which live therein.

10. The defendants own lands and claim water rights within the Ash Meadows area of Nye County near Devil's Hole and claim rights in or to the waters of that area, which claimed rights conflict with the claimed rights of the United States.

11. In June 1962, a copper washer was placed on the wall of Devil's Hole by the United States Geological Survey to serve as a reference point for its water level.

12. The Devil's Hole pupfish is dependent for feeding and reproduction and, hence, for its survival upon the natural rock shelf. This rock shelf is just below the surface of the water in Devil's Hole.

13. Prior to the defendants' groundwater pumping in the Ash Meadows area, the mean water level in Devil's Hole was 1.2 feet below the copper

washer and had not been lower than 1.59 feet below the copper washer.

14. The natural rock shelf and rubble thereon on which the Devil's Hole pupfish depend for feeding, reproduction and, hence, their survival, is nearly 100% covered with water when there is a mean water level of 3.0 feet below the copper washer.

15. The defendants drilled wells and began heavy pumping of groundwater in the summer of 1968. Since then the defendants have engaged in heavy groundwater pumping each year.

16. The defendants' pumping of groundwater from wells known as Nos. 1, 2, 3, 4, 5 and 6, and 16 and 17, has drawn water from the springs and underground sources which comprise the supply for Devil's Hole. Because the defendants' wells and Devil's Hole are hydraulically connected, defendants' pumping has caused the water level in Devil's Hole to drop.

17. In 1969 the water level in Devil's Hole reached a low of minus 2.3 feet below the copper washer.

18. In 1970 the water level in Devil's Hole reached a low of minus 3.17 feet below the copper washer.

19. In 1971 the water level in Devil's Hole reached a low of minus 3.48 feet below the copper washer.

20. In 1972 the water level in Devil's Hole reached a low of minus 3.93 feet below the copper washer.

21. If the defendants had pumped water from their wells in 1973 that was comparable or greater in amount than that pumped in 1972, the water level in Devil's Hole would probably have reached a low of more than minus 4.2 feet below the copper washer.

22. Since the source of water supplying both Devil's Hole and the groundwater tapped by the defendants' wells on Spring Meadows Ranch is the same, future wells in other areas of the ranch may have an adverse effect on the water level in Devil's Hole. Pumping from certain areas of the ranch, notably Sections 28, 33 and 34, T. 17 S., R. 50 E., Sections 31 and 32, T. 17 S., R. 51 E., Sections 2, 3 and 4, and 9, 10, 11, 12, 13, 14 and 15, T. 18 S., R. 50 E., and Sections 5, 6, 7 and 8, and 17 and 18, T. 18 S., R. 51 E., were shown to have a probable effect on the water level of Devil's Hole.

23. At the hearing held on June 2, 1973, counsel stipulated that:

(a) In September 1972 the water level in Devil's Hole ceased to drop at a level of about 3.7 feet below the level of the copper washer reference point.

(b) Throughout September, October and the early part of November 1972, the water level remained stabilized at about 3.7 feet below the copper washer reference point, during which time the production of water from the defendants' wells, as estimated from electrical power records, was about 700 acre feet per month, plus or minus 10%.

(c) The water level in Devil's Hole rose to the same position during the winter of 1972–73 as occurred during the winter of 1971–72, that being 2.65 feet below the copper washer reference point.

(d) The pumpage from the aquifer system in the Ash Meadows area can be regulated so as to produce stabilization of the water level in Devil's Hole at any desired position below its mean natural level of 1.2 feet below the copper washer.

(e) On May 30, 1973, the daily mean water level at Devil's Hole was 3.41 feet below the copper washer.[2]

24. In order to maintain a viable continuous population of Devil's Hole

---

2. For a comprehensive and chronological record of the daily mean water level from June 15, 1973, through March 3, 1974, inclusive, see the reports of the Special Master on file in this action. The first report was dated July 5, 1973, the ninth report March 19, 1974. Although this Court makes no findings relative to the Special Master's reports, it is believed that all counsel will concede the accuracy of the Special Master's findings as to the daily mean water level history found in the reports.

pupfish, the water level in Devil's Hole must be maintained above the natural rock shelf and the rubble thereon, which is a minimum of not less than a daily mean of 3.0 feet below the copper washer.

25. If the water level at Devil's Hole drops below 3.0 feet below the copper washer, the survival of the Devil's Hole pupfish will be threatened, that is, the time of their becoming extinct in the natural evolutionary order will be accelerated.

26. The use of an artificial shelf in Devil's Hole has not proven to be a successful alternative course of action for the preservation of the Devil's Hole pupfish.

27. Transplanting of the Devil's Hole pupfish has not to date proven to be a successful alternative course of action for the preservation of the Devil's Hole pupfish.

28. The United States has shown that the public interest lies in the preservation of this endangered species. Congress has enacted the Endangered Species Conservation Act (16 U.S.C. 668aa.), and the Secretary of the Interior pursuant to that statute has identified the Devil's Hole pupfish, Cyprinodon diabolis, to be an endangered species. Witnesses offered by the United States testified to the importance of the species to mankind. Congress, state legislatures, local governments, and citizens have all recently voiced their expression for the preservation of our environment, and the destruction of the Devil's Hole pupfish would go clearly against that theme of environmental responsibility.

29. In support of its prayer for a permanent injunction, the United States has shown that the pumping by the defendants from certain wells on the Spring Meadows Ranch lowers the water level in the pool in Devil's Hole in derogation of the prior rights of the United States to the use of the waters appurtenant to Devil's Hole for the preservation and maintenance of Devil's Hole and the Devil's Hole pupfish found therein.

30. If a permanent injunction is not granted restricting pumping by the defendants as prayed for on the Spring Meadows Ranch, there is grave danger that the Devil's Hole pupfish may be destroyed, resulting in irreparable injury to the United States.

31. Although the defendants have shown that they would suffer economic injury from the restrictions on their pumping prayed for by the plaintiff United States, there has been no request from the Government to completely prevent the use of any water by the defendants. The restriction prayed for was curtailment of the pumping only to the extent necessary to provide for the continued survival of the pupfish. In addition, so far all the wells identified as affecting Devil's Hole lie within two and one-half miles of Devil's Hole.

### Conclusions of Law

1. This Court has jurisdiction of the subject matter and of the parties to this action.

2. Through the Presidential Proclamation of January 17, 1952, and its publication in the Federal Register on January 23, 1952 (17 Fed.Reg. 691), the unappropriated waters in, on, under and appurtenant to Devil's Hole were withdrawn from private appropriation as against the United States and reserved to the extent necessary for the requirements and purposes of the said reservation.

3. The purposes of the reservation of Devil's Hole as part of Death Valley National Monument includes the preservation of the pool of water and the preservation of the Devil's Hole pupfish (Cyprinodon diabolis) which live therein.

4. Congress, through the Desert Land Act of 1877, 19 Stat. 377, and its predecessor acts of July 26, 1886, and July 9, 1870, 43 U.S.C. § 321, separated the public domain's water rights from its land rights.

5. The patents to which the defendants trace their ownership passed title to land, but not to any water rights.

6. The exchange of lands between the United States and the defendants in 1969 likewise did not pass any title to water rights.

■ 7. Because of the federal reservation of January 1952, and because the defendants have not shown this Court any water rights established prior to the federal reservation, the water rights of the plaintiff United States are superior in time and right to those of the defendants.

8. The behavior of the United States and the defendants in the land exchange, or in any other dealings, does not make out a case of estoppel against the United States.

9. The United States has shown that the public interest lies in the preservation of this endangered species. Congress has enacted the Endangered Species Conservation Act (16 U.S.C. 668aa et seq.), and the Secretary of the Interior pursuant to that statute has identified the Devil's Hole pupfish, Cyprinodon diabolis, to be an endangered species. Witnesses offered by the United States testified to the importance of the species to mankind. Congress, state legislatures, local governments, and citizens have all recently voiced their expression for the preservation of our environment, and the destruction of the Devil's Hole pupfish would go clearly against that theme of environmental responsibility.

10. The United States has no adequate remedy at law in the event the pupfish are rendered extinct by the action of the defendants in pumping groundwater on the Spring Meadows Ranch.

11. The United States has shown that it is entitled to a permanent injunction limiting the amounts of groundwater pumping from wells Nos. 1, 2, 3, 4, 5, 6, and 16 and 17, and limiting any future withdrawals from Sections 28, 33 and 34, T. 17 S., R. 50 E., Sections 31 and 32, T. 17 S., R. 51 E., Sections 2, 3 and 4, and 9, 10, 11, 12, 13, 14 and 15, T. 18 S., R. 50 E., and Sections 5, 6, 7 and 8, and 17 and 18, T. 18 S., R. 51 E., so that the water level in Devil's Hole does not drop below a daily mean water level of 3.0 feet below the copper washer.

## FINAL DECREE, ORDER CONTINUING APPOINTMENT OF SPECIAL MASTER, AND AWARD OF COSTS

### I.

### FINAL DECREE

This action having been submitted to this Court on plaintiff's application for a permanent injunction seeking to enjoin the defendants from pumping, except for domestic purposes, from wells Nos. 1, 2, 3, 4 and 5, located in Section 7, T. 18 S., R. 51 E.; well No. 6, located in Section 3, T. 18 S., R. 50 E.; wells Nos. 16 and 17, located in Section 8, T. 18 S., R. 51 E.; all other wells now existing or hereafter drilled within Sections 28, 33 and 34, T. 17 S., R. 50 E.; within Sections 31 and 32, T. 17 S., R. 51 E.; within Sections 2, 3, 4, 9, 10, 11, 12, 13, 14 and 15, T. 18 S., R. 50 E.; and within Sections 5, 6, 7, 8, 17 and 18, T. 18 S., R. 51 E., M.D.B. & M., and the Court having considered the pleadings, the affidavits, the testimony, the exhibits, the briefs, the oral argument of counsel, its findings of fact, conclusions of law and preliminary injunction of June 5, 1973, and having concluded that a permanent injunction should issue,

It is ordered, adjudged and decreed that, except for domestic purposes, the defendants are forthwith permanently enjoined as follows:

To limit the pumping from underground waters from wells Nos. 1, 2, 3, 4 and 5, located in Section 7, T. 18 S., R. 51 E.; well No. 6, located in Section 3, T. 18 S., R. 50 E.; wells Nos. 16 and 17, located in Section 8, T. 18 S., R. 51 E.; all other wells now existing or hereafter drilled within Sections 28, 33 and 34, T. 17 S., R. 50 E.; within Sections 31 and 32, T. 17 S., R. 51 E.; within Sections 2, 3, 4, 9, 10, 11, 12, 13, 14 and 15, T. 18 S., R. 50 E.; and within Sections 5, 6, 7, 8, 17 and 18, T. 18 S., R. 51 E.; M.D.B.

& M., to the extent required to achieve and to maintain at Devil's Hole, Death Valley National Monument, a daily mean water level of 3.0 feet below the copper washer described in finding of fact No. 11.

## II.

## ORDER CONTINUING THE APPOINTMENT OF SPECIAL MASTER

With the consent of all counsel, Leonard C. Halpenny, President of Water Development Corporation, of Tucson, Arizona, was, on June 5, 1973, appointed Special Master with full power under Rule 53 of the Federal Rules of Civil Procedure to establish the maximum quantity of water that the defendants may pump from their wells in order to carry out the terms of the preliminary injunction, to keep a daily log and to file periodic reports.

It is ordered that the said Special Master is continued in office until further order of this Court to:

(a) Establish forthwith for each of the defendants' wells now existing or hereafter drilled, more fully described above in the final decree, the maximum quantity of water, if any, that may be pumped consistent with this Court's final decree, minimizing, whenever possible, the injury to defendants' livestock and agricultural pursuits.

(b) Keep a daily log of the quantities of water, if any, pumped from each of the said wells; maintain a record of the daily mean water level at Devil's Hole; and maintain such other records of his administration as the Special Master, in his judgment, shall be deemed necessary.

(c) Once a month, report fully in writing on his administration as Special Master.

## III.

## AWARD OF COSTS

Costs are awarded to the United States, the prevailing party, and against the defendants. Costs include reasonable fees and reasonable expenses of the Special Master incurred to date and to be incurred in the future in the enforcement of this Court's final decree.